NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JASMINE CLARK et al., *Plaintiffs,* v. INTELENET AMERICA, LLC (d/b/a Intelenet Global Services), *Defendant.* | Civil Action No. 18-14052 OPINION |

**ARLEO,** UNITED STATES DISTRICT JUDGE

**THIS MATTER** comes before the Court by way of Named Plaintiffs Jasmine Clark's ("Clark") and Simone Legree's ("Legree," or together with Clark, "Plaintiffs") Renewed Pre-Discovery Motion for Conditional Class Certification and Court-Authorized Notice to Potential Opt-In Plaintiffs Pursuant to 29 U.S.C. § 216(b), ECF No. 57. For the reasons that follow, Plaintiffs' motion to conditionally certify the putative collective is **GRANTED**, and the parties are directed to meet and confer as to the form of notice.

**I. BACKGROUND**

Intelenet America, LLC (d/b/a Intelenet Global Services) ("Intelenet" or "Defendant") is a U.S.-based company that operates professional call center services for corporate clients. See First Amended Collective and Class Action Complaint ¶ 2, ECF No. 41; see also Pls.' Br. at 2, ECF No. 57.1. Defendant employs customer service representatives ("CSRs") who work from home or from Defendant's brick-and-mortar call centers. Am. Compl. ¶ 3. According to Defendant, "Intelenet had seven customer accounts during the relevant period," but "Plaintiffs and their declarants all worked on Account 1." Def.'s Opp. at 2, ECF No. 58.

Plaintiffs were employed by Defendant as at-home CSRs on an hourly non-exempt basis. Am. Compl. ¶¶ 3, 24-25. Clark was an at-home CSR in Florida from January 2018 to November 2018. Clark Decl. ¶ 2, ECF No. 57.8. Legree was an at-home CSR in New Jersey from January 2018 to August 2018. Legree Decl. ¶ 2, ECF No. 57.9. Both Clark and Legree state that they typically worked at least forty hours per five-day workweek and were paid $11.25 per hour, plus shift differentials and incentive pay. See Clark Decl. ¶ 2; Legree Decl. ¶ 2.

As relevant here, Plaintiffs allege that all at-home CSRs were required to perform a variety of off-the-clock work without compensation, including: (1) pre-shift computer start-up and login activities; (2) post-shift computer logout and shutdown activities; and (3) work-related computer and phone activities during unpaid meal breaks. See Clark Decl. ¶¶ 3, 6-9, 24-30; Legree Decl. ¶¶ 3, 6-9, 24-30. Plaintiffs further allege that they could not access "XactTime," Defendant's timekeeping software, until after they completed the alleged startup and login activities. Clark Decl. ¶¶ 9, 17; Legree Decl. ¶¶ 9, 17. They claim that they were required to perform post-shift logout and shutdown activities after logging out of XactTime. Clark Decl. ¶ 28; Legree Decl. ¶ 28. Plaintiffs estimate that they performed "in the range of 15 minutes" of unpaid pre-shift work, "1 to 10 minutes" of unpaid meal-break work, and between "3 to 4 minutes" of unpaid post-shift work daily, although sometimes more if they experienced technical problems, and "in the range of 5 to 10 minutes" of unpaid work per shift during their eight weeks of training. Clark Decl. ¶¶ 7, 21, 26, 29; Legree Decl. ¶¶ 7, 21, 26, 29. According to Plaintiffs, Defendant enforced these de facto off-the-clock work requirements in part through its written attendance policy, which requires CSRs to be logged in and on their phones no more than three minutes after the start of their scheduled shift. Clark Decl. ¶¶ 12-14; Legree Decl. ¶¶ 12-14.

2

Plaintiffs also claim that Defendant improperly excluded shift differential pay and incentive pay from their overtime rates. Am. Compl. ¶ 13.

## II. PROCEDURAL HISTORY

Plaintiffs filed suit against Defendant on September 20, 2018, on behalf of themselves and all other similarly situated individuals. Collective and Class Action Complaint, ECF No. 1. On April 29, 2019, they filed a First Amended Collective and Class Action Complaint, alleging: (1) violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., on behalf of themselves and a putative collective; and (2) various violations of New Jersey wage and contract law on behalf of themselves and a putative class under Federal Rule of Civil Procedure 23. On July 19, 2019, Plaintiffs filed a motion for conditional certification and court-authorized notice to potential collective members. Defendant opposed Plaintiffs' motion.

## III. LEGAL STANDARD

Under the FLSA, an employee who works in excess of forty hours per week is entitled to overtime compensation "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). An employee's "regular rate" generally "include[s] all remuneration for employment paid to, or on behalf of, the employee." Id. § 207(e). Employees may bring an action under the FLSA on behalf of "themselves and other employees similarly situated." Id. § 216(b). To become parties to a collective action, "employees must affirmatively opt-in by filing written consents with the court." Camesi v. Univ. of Pittsburgh Med. Ctr., 729 F.3d 239, 242-43 (3d Cir. 2013) (citing 29 U.S.C. § 216(b)).

Courts in the Third Circuit "follow a two-step process for deciding whether an action may properly proceed as a collective action under the FLSA." Camesi, 729 F.3d at 243 (citing Zavala v. Wal–Mart Stores Inc., 691 F.3d 527, 535 (3d Cir. 2012)). At the first step, the Court determines

whether to "'conditionally certify' the collective action for the purposes of notice and pretrial discovery." Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 192 (3d Cir. 2011), rev'd on other grounds, 569 U.S. 66 (2013). At the second step, the Court determines whether to grant final certification. See id.

During the first stage, "the court makes a preliminary determination as to whether the named plaintiffs have made a modest factual showing that the employees identified in their complaint are similarly situated." Camesi, 729 F.3d at 243 (internal citation and quotation marks omitted). Courts apply "a fairly lenient standard" in deciding whether a plaintiff has made the requisite "modest factual showing" for conditional certification. Id. (internal citation and quotation marks omitted). Conditional certification is appropriate only where "a plaintiff . . . produce[s] some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." Symczyk, 656 F.3d at 193 (internal citation and quotation marks omitted). Importantly, the Court does not assess the merits of a plaintiff's claims at the first step. See Goodman v. Burlington Coat Factory, No. 11-4395, 2012 WL 5944000, at *5 (D.N.J. Nov. 20, 2012).

## IV. ANALYSIS

### A. Conditional Certification of the Proposed Collective

Plaintiffs move for conditional certification of a collective of "[a]ll current and former hourly at-home Customer Service Representatives who worked for Defendant Intelenet America, LLC at any time within three years from the date this lawsuit was filed through judgment." Pls.' Br. at 1. The Court finds that Plaintiffs have satisfied their burden and conditionally certifies the proposed collective.

Plaintiffs identify two de facto common policies allegedly maintained by Defendant in violation of the FLSA: (1) failure to compensate CSRs for all time worked; and (2) failure to include incentive pay and shift differential pay in the calculation of CSRs' overtime rates. Id. In support of their allegations, Plaintiffs have submitted declarations from themselves and six other current and former at-home CSRs who worked in Florida, Indiana, and Texas, Plaintiffs' deposition transcripts, pay stubs for Plaintiffs and four of their declarants from 2018 and 2019, Clark's January 2018 time records, various written policies of Defendant's, and three emails from Team Leaders and a Learning Specialist.[1] Plaintiffs and their declarants state that "[p]ursuant to Defendant's policies, training, and direction," CSRs were required to perform a series of pre-shift start-up and login and post-shift logout and shutdown activities on their computers off-the-clock and without compensation.[2] See Clark Decl. ¶¶ 7-9, 28-30; Legree Decl. ¶¶ 7-9, 28-30; Abdullah Decl. ¶¶ 7-9, 28-30, ECF No. 57.10; Levy Decl. ¶¶ 7-9, 28-30, ECF No. 57.11; Potts Decl. ¶¶ 7-9, 28-30; ECF No. 57.12; Roy Decl. ¶¶ 7-9, 27-29, ECF No. 57.13; Watson Decl. ¶¶ 7-9, 28-30, ECF No. 57.14; Welch Decl. ¶¶ 7-9, 27-29, ECF No. 57.15. They also explain that Defendant required them to work during meal breaks, but Defendant did not compensate them for this time. See Clark Decl. ¶¶ 24-27; Legree Decl. ¶¶ 24-27; Abdullah Decl. ¶¶ 24-27; Levy Decl. ¶¶ 24-27; Potts Decl. ¶¶ 24-27; Roy Decl. ¶¶ 23-26; Watson Decl. ¶¶ 24-27; Welch Decl. ¶¶ 23-26. Pay stubs for Plaintiffs and four of their declarants purport to show that they received some incentive pay and

---

[1] Plaintiffs also attached the U.S. Department of Labor's "Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA)" as an exhibit. See ECF No. 57.26.

[2] While Defendant correctly notes that the declarations submitted by Plaintiffs "are essentially identical," Def.'s Opp. at 12, this fact does not preclude conditional certification. See, e.g., Archer v. Defs., Inc., No. 18-470, 2018 WL 5962470, at *2 (D. Del. Nov. 14, 2018) ("Defendant alleges that because these declarations are 'cookie-cutter,' the Court should disregard them as factual support. The Court disagrees. This is simply further evidence of a common policy or treatment of the proposed class."); Tompkins v. Farmers Ins. Exch., No. 14-3737, 2015 WL 4931605, at *4 (E.D. Pa. Aug. 18, 2015) (finding that plaintiffs' declarations, "boilerplate-like as they are," were sufficient at conditional certification stage) (internal citation and quotation marks omitted).

shift differential pay during their employment, and that their overtime rates did not account for such pay. See ECF Nos. 57.18-23.[3] In view of the "fairly lenient standard" that applies to motions for conditional certification, the Court is satisfied that, based on the present evidentiary record, Plaintiffs have made a "modest factual showing" that they and other at-home CSRs who worked for Defendant are similarly situated. Camesi v. Univ. of Pittsburgh Med. Ctr., 729 F.3d 239, 243 (3d Cir. 2013) (internal citation and quotation marks omitted).

Defendant's arguments against conditional certification are unpersuasive. As an initial matter, Defendant devotes much of its opposition brief to merits-based arguments, which are inappropriate at this preliminary juncture. See, e.g., Maddy v. Gen. Elec. Co., 59 F. Supp. 3d 675, 681 (D.N.J. 2014) (noting that "[c]ourts do not assess the merits of plaintiffs' underlying claims at [the conditional certification] stage"); Goodman v. Burlington Coat Factory, No. 11-4395, 2012 WL 5944000, at *6 (D.N.J. Nov. 20, 2012) (declining to "address[] the merits of Plaintiffs' claim and mak[e] credibility determinations" in evaluating motion for conditional certification).

Indeed, Defendant asserts that Plaintiffs' allegations are de minimis in nature and not credible in light of their deposition testimony and the eleven declarations submitted by Defendant. See generally Def.'s Opp. at 1-11, 17-27. Defendant further contends that Plaintiffs' submissions demonstrate "only individualized circumstances," rendering their FLSA claims unsuitable for

---

[3] Defendant argues that these six pay stubs alone are insufficient to support conditional certification. Contrary to Defendant's assertion that Plaintiffs' declarations "completely fail to address [the overtime miscalculation] issue," Def.'s Opp. at 27, all declarants identify the same hourly pay structure and several state that they "have had multiple conversations with . . . CSRs about Defendant's compensation policies." See, e.g., Clark Decl. ¶¶ 2, 37; Legree Decl. ¶¶ 2, 37; Levy Decl. ¶¶ 2, 37; Welch Decl. ¶¶ 2, 36. Considering the context of the evidence on the whole, the Court is satisfied that Plaintiffs have made the requisite factual showing for their overtime miscalculation claims.

collective resolution. Def.'s Opp. at 12.[4] In support of its position, Defendant points to Plaintiffs' alleged inability to recall certain details during their depositions, as well as declarations from current and former employees to show the "varied . . . time it takes to log in, log out, and open and close the necessary applications." Def.'s Opp. at 8; see also ECF Nos. 58.1-11. In effect, Defendant invites the Court to weigh the credibility of Plaintiffs' claims. Such contentions implicate the merits of the case and are premature at this stage of proceedings, where the proper focus of the Court's inquiry is on whether similarly situated plaintiffs exist.[5] Whether Plaintiffs have in fact demonstrated a violation of the FLSA is a question reserved for later stages of this litigation. See Maddy v. Gen. Elec. Co., 59 F. Supp. 3d 675, 682-83 (D.N.J. 2014) ("Whether or not this [unpaid work-related] activity actually satisfies the elements of a claim under the FLSA is a merits question and thus inappropriate at this conditional certification stage.")

The Court also denies Defendant's request to limit the collective to only those CSRs who worked on Account 1. As noted above, Plaintiffs have submitted a total of eight declarations from current and former at-home CSRs who worked in different states, all of which contain substantially similar allegations of off-the-clock work. Several declarants identify other CSRs with whom they "have had multiple conversations . . . about Defendant's compensation policies . . . and Defendant's failure to pay CSRs" for all time worked. See, e.g., Clark Decl. ¶¶ 36-37; Legree Decl. ¶¶ 36-37; Levy Decl. ¶¶ 36-37; Roy Decl. ¶¶ 35-36; Welch Decl. ¶¶ 35-36. While Defendant

---

[4] This contention does not square with Defendant's argument that Plaintiffs' declarations "are essentially identical." See supra n.2. In any event, because Plaintiffs need only show that they are similarly, not identically, situated, the slight variations between the declarations do not preclude conditional certification. See Steinberg v. TD Bank, N.A., No. 10-5600, 2012 WL 2500331, at *8 (D.N.J. June 27, 2012) (explaining that "conditional certification only requires that plaintiffs be similarly situated, not identical; some differences can therefore be tolerated").

[5] To the extent Defendant argues that conditional certification is improper because it maintains written policies requiring Plaintiffs to record all time worked, see Def.'s Opp. at 15-16, that argument is similarly unavailing. See Shakib v. Back Bay Rest. Grp., Inc., No. 10-4564, 2011 WL 5082106, at *3 (D.N.J. Oct. 26, 2011) (finding that "arguments concerning actual payment of overtime hours or the existence of a written policy to do so go to the merits of a case, and are thus inapplicable at [the conditional certification] stage").

maintains that Plaintiffs and their declarants only worked on Account 1, it concedes that one of the CSRs identified in the declarations worked on a different account. See Def.'s Opp. at 14; see also Pierce Decl. ¶¶ 37-38, ECF No. 58.1 (noting that at-home CSR Tiffany Bennett worked on Account 6).[6]

Furthermore, several of Defendant's own proffered "happy camper" declarations support the basic premise of Plaintiffs' claims. For instance, Site Director Erik Barhydt stated that "[i]n order to clock in with XactTime, at-home employees must first connect to [Defendant's] virtual private network." Barhydt Decl. ¶ 14, ECF No. 58.2. According to Barhydt, "[i]mmediately after connecting to the VPN and launching Windows employees can . . . open XactTime." Id. ¶ 15. Similarly, Defendant's Human Resources Manager Faith Pierce explained that "at-home employees – such as Jasmine Clark and Simone Legree – are able to access XactTime and clock in as soon as they connect to [Defendant's] virtual private network . . . and launch Windows." Pierce Decl. ¶ 25. While Barhydt noted that the telecommunications devices and computer hardware and software differ by account, Barhydt Decl. ¶¶ 8-10, Barhydt's and Pierce's declarations nevertheless suggest that, consistent with Plaintiffs' claims, all at-home employees must perform some work-related login activities before they can access Defendant's timekeeping software. As such, the parties' declarations support a finding that all at-home CSRs are similarly situated. See, e.g., Maddy v. Gen. Elec. Co., 59 F. Supp. 3d 675, 682 (D.N.J. 2014) (granting conditional certification and noting that because defendants "admit that service technicians must begin each day by logging into their computers and checking their calls for the day, . . . [i]t is clear that some unpaid work-related activity must necessarily occur . . . and that all service technicians across all zones are similarly situated in this regard"); Serbay v. Dialogdirect, Inc., No. 16-12716,

---

[6] Bennett has filed a "Consent to Join" form with the Court. See ECF No. 37.3.

2017 WL 163866, at *5 (E.D. Mich. Jan. 17, 2017) (conditionally certifying collective of customer service representatives across fourteen call centers nationwide because "defendants admit to the basic premise of plaintiff's case—that a CSR has to log in to a computer before being paid for time at work").

In addition, two of the policies that Plaintiffs attached lend further, albeit modest, support for their theory of relief: (1) the Employee Handbook, which provides that "Tardy is defined as logging on the phones more than 3 minutes late for the start of a shift and returning late from . . . meals," ECF No. 57.30 (emphasis in original); and (2) the "How to Log into your Computer" policy, which outlines a series of computer login steps, ECF No. 57.27. Neither policy appears to be limited to Account 1.

In conditionally certifying the collective, the Court emphasizes that the "[t]he sole consequence of conditional certification is the dissemination of court-approved notice to potential collective action members." Colosimo v. Flagship Resort Dev. Corp., No. 17-3969, 2019 WL 1349755, at *2 (D.N.J. Mar. 26, 2019) (internal citation and quotation marks omitted). To the extent that Defendant is "concern[ed] about a collective class that is broader than what is justified by the evidence, the Court will carefully scrutinize the evidence before granting final certification of the employees to be included." Thomas v. Walmart, Inc., No. 18-4717, 2019 WL 7041809, at *4 (E.D. Pa. Dec. 19, 2019).[7]

---

[7] Defendant relies on Friscia v. Panera Bread Co., No. 16-3754, 2018 WL 3122330 (D.N.J. June 26, 2018), to argue that the collective should be limited to Account 1. However, in Friscia, unlike here, the plaintiff brought misclassification claims and only submitted two declarations from employees in the same state in support of her motion for conditional certification. Id. at *2. Plaintiffs here have submitted both declarations and other documentary evidence, which militate against limiting the collective at this stage.

9

### B. Form of Notice

Plaintiffs request permission to send Court-approved notice by mail, email, and text message, and have submitted proposed forms of notice. See ECF Nos. 57.4, 57.7. Defendant objects to the proposed forms of notice and requests that resolution of the notice issue be deferred because "[t]he scope of conditional certification granted would inform the discussion between the parties." Def.'s Opp. at 38. The Court instructs the parties to meet and confer regarding the method, timing, and content of any notice, and submit agreed-upon proposed forms regarding same, to the Honorable Joseph A. Dickson within fifteen (15) days of the accompanying Order. This expedited meet-and-confer schedule will help ensure that potential collective members receive timely notice.

### V. CONCLUSION

For the foregoing reasons, Plaintiffs' motion to conditionally certify the putative collective is **GRANTED**, and the parties are directed to meet and confer as to the form of notice. An appropriate Order follows.

Date: February 19, 2020

**/s/ Madeline Cox Arleo**
**Hon. Madeline Cox Arleo**
**UNITED STATES DISTRICT JUDGE**